King, J.
(In place of Hale, J.)
The plaintiff m error was plaintiff below, and brought its action to recover the value of fifteen (15) bonds, it alleged that the defendant had converted' to. his own use,of the value of $15,000.' Defendant in his answer denied the conversion, alleged that the bonds, with others, were placed in his hands as a broker to negotiate a sale thereof, and, as a second defense, alleged that he rendered services pursuant to an employment by the railroad company in the sale of an issue of $1,000,000 of bonds, which entitled him to a commission as compensation in the sum of $25,000.
The trial resulted in a verdict and judgment for the defendant in the sum of $4,750.
The first objection, and one argued at length, is that the only authority shown for the services defendant alleges he rendered, is pursuant to a written agreement set forth in the ¿nswer, purporting to have been, made with the plaintiff, but in fact, plaintiff says it was made with the president and assistant secretary of the corporation, and without the knowledge or consent of the board of directors, and, it is argued, was beyond the power and authority of these officers to make.
It appears from the record, that the defendant has for many years been interested and engaged in owning, negotiating, buying and selling securities of the character described in this case; that the president of this railroad company was his brother, the secretary thereof, a relative, and he himself was a stockholder; that on January 12th, at a stockholders’ meeting, a resolution was adopted authorizing the board of directors to mortgage the railway property for $1,000,000, and to execute bonds for that sum bearing interest at five per cent, and due in eighteen years, and to dispose of the same and use the proceeds in payment of an existing mortgage and certain floating indebtedness; and defendant claims, that, thereafter, the president and secre *183 tary directed him, verbally, to investigate the bond market. That he had repeatedly been engaged in negotiating loans for the plaintiff, and these officers called on him again. That he visited eastern cities where such bonds are usually sold, and made efforts to sell and place them.
Before any bonds were actually sold, the board of directors,on the 12th day of March, passed a resolution authorizing the president and secretary of the corporation to cause the bonds to be printed, to properly execute a mortgage upon the property securing the same, and to dispose of the bonds and pay the indebtedness before referred to
On the 2nd of March, ten days before the passage of this resolution, the contract which the defendant alleges is the written evidence of his employment was entered into actually between the president and the assistant secretary of the corporation on one hand, and Sylvester T. Everett on the other hand, but apparently was entered into by the railroad company through said officers.
The evidence seems to satisfactorily show that beyond the knowledge of the president, secretary, assistant secretary, and one other director, the other directors ’ as individuals and the board of directors as a body had no notice or knowledge of any kind that this employment or contract had been entered into. And these directors, outside of the four mentioned, testified that they had no knowledge that Mr. Everett was engaged in the performance of services for this railroad company.
We do not think, however, in order to sustain the defendant’s claim, that it was necessary to show a contract with the corporation, although on that point the court charged the jury that it was necessary to either show a contract with the board of directors, or a ratification by them of one already made.
Without extensively quoting, reference may be made to 3 Thompson’s Law of Corporations, sec. 3945, and the case there cited, 11 Metcalf, Mass., 167.
*184 Same author, sec. 3955, says:
“The execution of the necessary written instruments to effectuate the powers thus possessed by such committee, being a mere ministerial act, the committee has, no doubt, the power to appoint an attorney in fact or sub-agent to execute such instruments.”
And the same author, vol. 4, sec. 4659, refers to numerous acts which have been held valid on the part of the president of the corporation without express authority, Among others, “to employ a broker to sell certain stock which the bank has taken to secure a loan.”
Section 5866, refers to the powers of the president, or secretary or managing officer, to employ an attorney to prosecute or defend litigation, and referring to authorities in 9th Paige, 496; 5 Denio, 355; 61 Missouri, 89-94; 2 Metcalf, Ky., 240. Also sec. 4970, referring to a case in 13 Col., 534, And as to the general doctrine upon this subject, I refer to the same author, sec. 4881:
The stockholders in this case bad conferred upon the board of directors the power, not only to make out the evidences of debt and execute them, but to negotiate and sell them. The board conferred upon its president and secretary practically the same power. Hence we think the president and secretary might authorize one engaged in the business of negotiating for purchasers of such securities, to negotiate for the sale of these, and that, if the defendant, pursuant to this authority, verbally in the first instance, but afterwards reduced to writing, performed services, and on March 12th. the power of the president was confirmed by the resolution of the board, then he might recover what those services were reasonably worth.
It is urged in the second place, that the charge of the court is erroneous in this respect, that the court said to the jury, “the testimony of experts in the form of an opinion as to the value of such services, based upon an assumed *185 state of facts — a supposed state of facts — is entitled to little weight if the facts assumed, or any material part thereof, as the basis of their opinion, are not true.” There is a little more in the charge to the same effect. And we think that this portion of the charge is not supported by the authorities, especially a case in the 7th Circuit Court Reports, 328 and 332; also 28 Ohio St., 547. We should be obliged to hold this was erroneous, but curiously enough, before the court proceeded to give its general charge, the plaintiff requested certain matters to be given in the charge to the jury, and, among others,-the following:
”14. Testimony of experts in'the form of opinions based upon an assumed state of facts, is entitled to but little weight if the facts assumed, or any material part thereof, as the basis of their opinions, is not true.”
According to our analysis of this request and the charge upon that subject, they are substantially identical in form and effect, and the plaintiff having requested the court to give that to the jury, carl hardly take advantage of it by exception or objection now after the court has given it.
3rd. Passing from the charge upon the subject of expert evidence, there are numerous objections to the form of questions and the character of the testimony given in response thereto, throughout the record. On page 250, is the first of these, and it contains, as a fact, one statement that is carried into very many of the questions in this record, and may be disposed of in passing upon this single question. The witness is inquired of, in substance, what would be a fair commission for selling SI,000,000 of five per cent, bonds running eighteen years and conditioned upon the paying off of a prior 1500,000 mortgage and cancelling certain floating indebtedness? The attorney, in a second question, says, you would have to take it for granted that the company placed a minimum limit of 95 and that the bonds, in point of fact, were placed at from 98 to par. *186 Again, the attorney says before the answer comes in, placing them at from 98 to par, the minimum price for the sale of the bonds by the company being 95. To all of this there are proper objections, and the witness answers, that the commission, under these circumstances, would be 3-J- to 5 per cent.
The difficulty with this question arises from the assumption that the company had authorized the sale of these bonds at 95. From first to last of this record,'there is produced no action of the company fixing the minimum price at which these bonds were to be sold, no action of the company fixing any price at which they should be sold, no action by the company, by its board of directors or stockholders, authorizing any committee of its own numoer to fix a price at which these bonds should be sold, no resolution authorizing the president and secretary to fix such price, and we are constrained to hold that upon the proposition of the power to fix a price less than par, that the president or secretary or other officer or person having only a general authority to negotiate for the sale of bonds, has no power to sell the same at less than par without the concurrence of the board of directors in his act, and hence, that the minimum price fixed for these bonds at ninety-five cents on the dollar is an assumption not supported by the proof. The only ground for that arises in the written contract set forth in defendant’s answer, in which the defendant is authorized to negotiate these bonds at a price not less than ninety-five cents on the dollar; but, as I have suggested, the president had not any authority to fix the price, and, consequently, had no authority to authorize the defendant to fix that price as a minimum, and hence, it was an improper fact to put into a hypothetical question.
A reading of these questions and the answers thereto, indicate that the witnesses generally gave considerable.importance to the fact that the company was willing to sell *187 these bonds at ninety-five cents on the dollar, and that this broker had negotiated their sale at ninety-eight cents or par, and it had, in our judgment, considerable effect in determining the amount of commission testified to by these various witnesses.
On page 287 of the record a. hypothetical question is asked, substantially in this form: “What would be a fair compensation for the sale of these bonds, running eighteen years, bearing five per cent, interest,the sale being made at 98,- and from the proceeds pay off a mortgage of $500,000, Mr. 'Sylvester T. Everett managing all the details of the transaction and paying his own expenses?” We think thatjiB an unfair assumption. The question should state the precise facts, whether these are but few in number or many, which it is claimed the evidence tends to prove were the acts performed in the sale of these bonds and the earning of this commission, and to inject into the question “managing all the detail of the transaction,” is meaningless, or if it has a meaning,may well be misleading, and the question should not have been allowed.
On pages 377 and 378 of the record are questions asked of the witness Lamprecht, in one of which is stated this hypothesis
“Before going east he executes one note signed by himself for $100,000 endorsed by the East Cleveland Railway Company, endorsed another note • executed by the East Cleveland Railroad Company to raise money to pay off the $200,000 with accruing interest on the note secured by mortgage for $500,000 in the east.”
We think these facts should have been omitted from that question, and that the question was incompetent in the form in which it was made.
Defendant’s cause of action is not for commissions earned in endorsing paper, and, so far as anything in this record is concerned, there is nothing to show but that this was al *188 ways an accomodation on the part of the defendant, and there was no understanding or agreement with the president or. any other officer of the corporation that the ^defendant was: to be paid for such endorsements, and that should have been omitted from the question.
All of these questions, then, to which special reference has been made, were erroneous, and we think their answers had considerable effect upon the verdict in this case.
áth. Considerable has been said about the charge of the court upon the subject of ratification.
We do not think anything in the charge of the court is erroneous upon that subject unless it may be said, that the court gave too great prominence to that question and the charge is thereby misleading. There is, in our judgment, no evidence in this case, upon the subject of ratification. Defendant was entitled to recover, if at all, upon his contract ■ of employment. He has certainly shown no ratification of' the contract that would authorize him to recover. We do not discuss, or think it necessary to discuss, whether he should have pleaded that or not. But the court might well have omitted considerable in the charge, upon the subject of' ratification.
5th. We believe and are constrained to hold that this verdict is erroneous as to the amount of it. We think the weight of the evidence indicates that the defendant was not entitled to recoveras his compensation for the services rendered, in any event, a sum exceeding the amount of the proceeds of the bonds he admitted he had received.
Shortly after the time when defendant alleged he performed the services, the president called upon him for his bill, and he made a' written statement to the railroad company in which he charged the company for various services performed by him, for various sums of money paid to and for its use, and charged himself with the receipt of the $15,000 worth of bonds as well as others balancing the account *189 and so far as his act goes, satisfying his claim against the company by the receipt and credit of $15,000. That was an important act, and the jury ought to have been instructed that it was entitled to great weight,and we think it is fair to say that from all the evidence, plaintiff ought not to recover a new and greater amount than that which he accepted, received, and notified the company was a full payment from it. It has more weight than a mere account; it has the effect of a receipt in full to the company; and, while a receipt may be explained, there seems to be nothing here explaining it, or no explanation other than that the amount credited was not as much as the services were worth in the pinion of the witness given at this trial.
J. M. Jones and W. W. Boynton, for Plaintiff in Error.
. Dickey, Brewer & McGowan; Everett, Weed, Meals & Sluss, for Defendant in Error.
We conclude, therefore, that because the amount of the recovery of the defendant is in excess of the amount he is entitled to receive, and because of the introduction of this' evidence based upon improper, hypothetical questions as referred to, that the judgment in this case must be reversed.
Caldwell, J'.
The court below, on the question of the authority of the committee appointed to negotiate these bonds — -on the authority of the president to appoint Sylvester T. Everett to aid and assist the committee, charged the law in such manner that the plaintiff in error is not complaining of it, and there is no cross-petition in error, so that the law, as charged by the court below, is not involved in this case in the trial here and, not being involved, I do not want it understood that I am committed to that proposition of law.